DAVID YOSHIDA, ESQ. (SBN 272578)
THE YOSHIDA FIRM, PC
4500 Park Granada, Suite 202
Calabasas, CA 91302
323-977-7001
david@theyoshidafirm.com

Attorney for Plaintiff Laila Klinsmann

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LAILA KLINSMANN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MAGGIE JACOBS, an individual; LAUREN McDOWELL-JACOBS, an individual; PONY UP SPORTHORSES, LTD., a North Carolina limited liability company,<br><br>Defendants. | Case No. _______________<br><br>**COMPLAINT FOR FRAUD, FRAUDULENT CONCEALMENT, INTENTIONAL MISREPRESENTATION, AND NEGLIGENT MISREPRESENTATION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff LAILA KLINSMANN alleges as follows:

## I. INTRODUCTION

1. "Lame left front at prepurchase in September. Blocked to the coffin joint. Coffins and fetlocks were treated September 18, and horse improved enough for purchase." So reads the clinical history recorded by a board-certified veterinary radiologist in the December 2, 2024 MRI report for Hero (Imandouw), a sport horse Defendants sold to Plaintiff Laila Klinsmann for $200,000.

2. Defendants knew Hero had a chronic, progressive left front lameness localized to the coffin joint. Their own veterinary records, maintained at Fairfield Equine Associates from April through August 2024, documented repeated episodes of worsening lameness, culminating in a 2/5 lameness grade just three weeks before the sale.

3. Defendants disclosed none of these records to Plaintiff, her trainer, or her pre-purchase examination veterinarian.

4. Instead, Defendants arranged for therapeutic injections into Hero's front coffin joints and fetlocks on September 7, 2024, two days after the PPE veterinarian found Hero "slightly off." The injections suppressed the active lameness long enough for the horse to pass re-examination on September 18, 2024. The sale closed. Sixty days later, the lameness returned.

5. MRI confirmed a deep digital flexor tendon tear in the precise anatomical region Defendants' own veterinarian had identified months earlier.

6. This action seeks compensatory damages and punitive damages for Defendants' deliberate concealment of a known, material defect and affirmative misrepresentations in a $200,000 transaction.

## II. PARTIES

7. Plaintiff LAILA KLINSMANN ("Plaintiff") is an individual and citizen of the State of California, residing in Newport Beach, California, within the Central District of California.

//

//

//

8. Defendant MAGGIE JACOBS ("Jacobs") is an individual who, on information and belief, is domiciled in Wellington, Florida. Jacobs personally conducted the sale of the horse at issue, negotiated the terms of the transaction, arranged transport, and is identified as the owner on veterinary treatment records from Dr. Heather Sherman, DVM, dated September 7, 2024.

9. Jacobs is also identified as a co-owner on the Fairfield Equine Associates patient records for the horse.

10. Defendant LAUREN McDOWELL-JACOBS ("McDowell-Jacobs") is an individual believed to be domiciled in the State of North Carolina. McDowell-Jacobs is the mother of Jacobs, is identified as the seller and signatory on both the Horse Purchase and Sale Agreement and the Bill of Sale, and is listed as a co-owner on the Fairfield Equine Associates patient records.

11. Defendant PONY UP SPORTHORSES, LTD. ("Pony Up") is a business entity organized under the laws of North Carolina, with its principal place of business at 333 N. Island Crossing, Edenton, NC 27932. Pony Up is identified as the seller entity on both the Purchase Agreement and the Bill of Sale.

12. At all times relevant to this Complaint, Jacobs and McDowell-Jacobs acted as agents, principals, and/or alter egos of Pony Up. Each individual Defendant is liable for the fraudulent acts alleged herein by reason of direct personal participation in the conduct giving rise to Plaintiff's claims.

## III. JURISDICTION, VENUE, AND THE FORUM SELECTION CLAUSE

### A. SUBJECT MATTER JURISDICTION

13. This Court has original jurisdiction under 28 U.S.C. section 1332(a). Plaintiff is a citizen of California. Defendant Maggie Jacobs is, on information and belief, a citizen of Florida. Defendant Lauren McDowell-Jacobs is a citizen of North Carolina. Defendant Pony Up Sporthorses, Ltd. is organized under North Carolina law with its principal place of business in Edenton, North Carolina. No Defendant is a citizen of California. Complete diversity exists. The amount in controversy exceeds $75,000, exclusive of interest and costs.

### B. PERSONAL JURISDICTION

14. This Court has personal jurisdiction over each Defendant under Federal Rule of Civil Procedure 4(k)(1)(A) and California Code of Civil Procedure section 410.10, which extends jurisdiction to the full limits of federal due process. Defendants directed fraudulent communications into California, negotiated with a California buyer, and committed tortious acts whose effects were suffered in California. *See Calder v. Jones*, 465 U.S. 783, 788-89 (1984).

### C. VENUE

15. Venue is proper under 28 U.S.C. section 1391(b)(2). A substantial part of the events giving rise to this action occurred in this District, including Plaintiff's receipt of and reliance upon Defendants' omissions, Plaintiff's payment of $200,000, and Plaintiff's discovery of the fraud. Plaintiff resides in Newport Beach, within this District.

## D. THE FORUM SELECTION CLAUSE IS UNENFORCEABLE

16. Section 9 of the Purchase Agreement contains a forum selection clause in which the original printed text was obliterated with heavy black marker in three separate locations, rendering the original governing law state and venue designation unreadable. “North Carolina” was handwritten above the first redaction. The notation “Chowan County N.C.” appears separately in the margin adjacent to Section 10, physically displaced from the clause it purports to modify.

17. On information and belief, the original printed template designated Florida, a state with a substantial connection to the transaction: Hero was shipped to Wellington, Florida; Plaintiff competes there; and post-sale MRIs were performed at Palm Beach Equine Clinic in Wellington. The substitution replaced a transaction-connected forum with Defendants’ home county.

18. The only initial appearing adjacent to the Section 9 modifications is dated September 18, 2024, two days before Plaintiff signed the Agreement on September 20, 2024. That initial is the Seller’s, not Plaintiff’s. Plaintiff did not initial or otherwise acknowledge any of the handwritten modifications to the Agreement, including the Section 9 forum and governing law changes, the alteration of the effective date from the 18th to the 20th, or the striking of the horse’s location in Section 2. Section 10 of the Agreement provides that it “may not be modified or amended in any manner except by an instrument in writing executed by the parties.” The unilateral handwritten changes do not satisfy this requirement.

19. A forum selection clause that was hand-redacted by the seller, substituted with the seller's home county, and never initialed by the buyer was not freely and voluntarily negotiated at arm's length and should not be enforced.

## IV. CHOICE OF LAW

20. Plaintiff's tort claims for fraud, fraudulent concealment, intentional misrepresentation, and negligent misrepresentation are governed by California law under the governmental interest analysis applied by federal courts sitting in diversity in this Circuit.

21. California has the materially greater interest in this dispute: Plaintiff is a California resident, Defendants directed their fraudulent conduct at a California buyer, Defendants transmitted material omissions into California, and Plaintiff suffered the resulting harm in California.

22. Even if the contractual choice-of-law provision in Section 9 of the Purchase Agreement were enforceable as to contract claims, it does not extend to independent tort claims. Under Restatement (Second) of Conflict of Laws section 187(2) (Am. L. Inst. 1971), a contractual choice-of-law clause will not be applied to override the law of a state with a materially greater interest in the determination of a particular issue, and California's interest in deterring fraud against its residents is paramount.

23. The contractual choice-of-law clause is independently defective for the reasons set forth in Section III above.

24. The Bill of Sale's governing law clause is similarly defective, bearing the same hand-modification.

25. The Bill of Sale further provides: “Should any clause be in conflict with any State Law, that clause shall be considered null and void.” To the extent any choice-of-law provision conflicts with California’s mandatory protections against fraud, it is void by the Bill of Sale’s own terms.

## V. FACTUAL ALLEGATIONS: DEFENDANTS’ ACQUISITION OF HERO AND THE CONCEALED LAMENESS HISTORY (MARCH THROUGH AUGUST 2024)

26. In approximately March 2024, Defendant Maggie Jacobs purchased the horse known as Hero (registered name: Imandouw), a KWPN gelding, date of birth October 7, 2013, microchip number 528210002979488, from a prior owner in Ireland.

27. A pre-purchase examination conducted in Ireland by Tim Brennan, MVB, noted that Hero was 1/10 lame left front on hard ground. Defendants were aware of this finding at the time of acquisition.

28. Following purchase, Defendants imported Hero to the United States and stabled him in Greenwich, Connecticut, under their care and control.

29. From April through August 2024, Hero was treated by Fairfield Equine Associates in Newtown, Connecticut. The Fairfield Equine patient records identify both Lauren McDowell-Jacobs and Maggie Jacobs as owners.

30. On June 11, 2024, Dr. Stacy of Fairfield Equine Associates conducted a formal lameness examination. Hero was diagnosed with left front foot pain. A High Palmar Digital Nerve block produced 100% improvement, localizing the source of pain to the coffin joint region: the same anatomical region where the deep digital flexor tendon tear was later confirmed by MRI.

31. On August 24, 2024, less than four weeks before the sale to Plaintiff, Fairfield Equine Associates examined Hero again. The clinical record states Hero was "off LF earlier this week, getting progressively worse." Hero was scored at 2/5 lame left front, a significant lameness grade. Focal hoof tester sensitivity was noted.

32. These clinical records were in Defendants' possession at all times relevant to the sale of Hero to Plaintiff. Defendants disclosed none of them.

## VI. FACTUAL ALLEGATIONS: THE PRE-SALE INJECTIONS AND THE CORRUPTED PRE-PURCHASE EXAMINATION (SEPTEMBER 2024)

33. On September 5, 2024, Dr. Alisson Farley, DVM, Plaintiff's selected pre-purchase examination ("PPE") veterinarian, conducted the first portion of the PPE on Hero in Connecticut. Dr. Farley found Hero "slightly off."

34. On September 7, 2024, two days later, Dr. Heather Sherman, DVM, of John R. Steele & Associates (Vernon, New York), administered bilateral therapeutic injections to Hero's front coffin joints and fetlocks, consisting of hyaluronic acid, Amikacin, and Betamethasone. Dr. Sherman's treatment record identifies the owner as "Maggie Jacobs" and the clinical history as "based on prepurchase exam by Dr. Allison Farley."

35. Defendants did not disclose to Plaintiff that Dr. Sherman and Dr. Farley were both associated with John R. Steele & Associates.

36. On September 18, 2024, Dr. Farley returned and rechecked Hero. Dr. Farley noted: "I find the horse acceptably sound today after treatment and acceptable to proceed with imaging. Overall acceptable risk assessment for management of sport and resale."

37. Dr. Farley has confirmed in writing that she received no written medical records from the Seller prior to or during the examination.

## VII. FACTUAL ALLEGATIONS: DEFENDANT MAGGIE JACOBS' AFFIRMATIVE MISREPRESENTATIONS TO THE PPE VETERINARIAN

38. In addition to concealing written medical records, Defendant Maggie Jacobs made specific, provably false verbal representations to Plaintiff's PPE veterinarian, Dr. Alisson Farley, during the pre-purchase examination process. Dr. Farley's contemporaneous PPE report records the following verbal medical history, attributed to Maggie Jacobs by name:

> "Health History: no colic, no surgery, no illness, no allergies disclosed. Reportedly had a hoof abscess LF one week ago. Given By: Maggie Jacobs. Known Vices: none. Vaccine Status: current. Current Medications: none. Treatment History: none while in current owner's care."

39. Dr. Farley has confirmed in writing that this medical history is quoted verbatim from her contemporaneous September 5, 2024 PPE report.

40. Each of the following representations by Defendant Jacobs was false:

(a) "Treatment History: none while in current owner's care." This statement was false. At the time Defendant Jacobs made this representation, she and Defendant McDowell-Jacobs had maintained Hero under the care of Fairfield Equine Associates from April through August 2024. During that period, Hero received a formal lameness examination with nerve block on June 11, 2024, was prescribed Flunixin Meglumine (an anti-inflammatory pain medication),

and was evaluated for progressive left front lameness on August 24, 2024. The Fairfield Equine patient records documenting this treatment were maintained under the ownership names of both Maggie Jacobs and Lauren McDowell-Jacobs.

(b) "no illness." This statement was false. Hero had been diagnosed with left front foot pain by Fairfield Equine Associates on June 11, 2024, and was documented as having a progressive, worsening left front lameness as recently as August 24, 2024, just twelve days before the PPE.

(c) "Reportedly had a hoof abscess LF one week ago." This statement was materially misleading. By characterizing Hero's left front condition as a "hoof abscess," a minor, self-resolving condition, Defendant Jacobs affirmatively mischaracterized a chronic, progressive lameness condition that had been documented by her own veterinarians over a period of months and had reached a clinically significant 2/5 lameness grade. A hoof abscess and a progressive deep digital flexor tendon condition localized to the coffin joint are not the same condition, and Defendant Jacobs knew this or should have known this based on the veterinary records in her possession.

41. These misrepresentations were made by Defendant Jacobs directly to the veterinarian upon whose professional judgment Plaintiff relied in deciding whether to proceed with the purchase. Dr. Farley's PPE assessment, including her conclusion that Hero presented an "acceptable risk assessment for management of sport and resale," was informed by and dependent upon the accuracy of the medical history provided by the Seller. The medical history was false.

42. Dr. Farley received radiographic images (X-rays) from Defendant Jacobs prior to the PPE, transmitted in part through Tom Davison of Crooks Show Jumping on or about September 6, 2024, and in part directly from Defendant Jacobs to Dr. Farley on or about September 6, 2024. These radiographic images were structural X-rays from the Irish pre-purchase examination in July 2023. They did not include the Fairfield Equine Associates clinical records documenting lameness, diagnosis, or treatment from April through August 2024. Defendants provided imaging but withheld the clinical history that would have revealed the significance of the imaging.

43. The Purchase Agreement was executed on September 18, 2024 (Seller's signature) and September 20, 2024 (Plaintiff's signature). The Bill of Sale was executed September 29, 2024. The purchase price was $200,000.

## VIII. FACTUAL ALLEGATIONS: WHAT DEFENDANTS CONCEALED

44. At no time before or during the sale did Defendants disclose to Plaintiff, to Plaintiff's representative Debbie Klinsmann, or to Plaintiff's pre-purchase examination veterinarian Dr. Alisson Farley, DVM, any of the following material facts:

(a) That Hero had been diagnosed with left front foot pain localized to the coffin joint region by a High Palmar Digital Nerve block on June 11, 2024, by Dr. Stacy of Fairfield Equine Associates, with 100% improvement upon blocking.

(b) That Hero's left front lameness had been progressive and worsening, reaching a grade of 2/5 lame left front on August 24, 2024, just three weeks before the sale.

(c) That the Fairfield Equine Associates clinical records documented a pattern of recurring left front lameness requiring repeated veterinary intervention from April through August 2024.

(d) That the bilateral therapeutic injections administered by Dr. Heather Sherman on September 7, 2024, were intended to suppress an active, diagnosed lameness condition rather than serve as routine maintenance.

(e) That Dr. Sherman (who administered the pre-sale injections) and Dr. Farley (who conducted the PPE) were both associated with John R. Steele & Associates, a professional relationship that was not disclosed to Plaintiff.

45. Dr. Farley has confirmed in writing that she received no written medical records from the Seller prior to or during the pre-purchase examination.

46. Debbie Klinsmann, Plaintiff's representative who managed the transaction on Plaintiff's behalf, has confirmed that she did not receive or review the Fairfield Equine Associates clinical records or Dr. Sherman's September 7, 2024 treatment records at any time before closing.

47. Each of these omissions was material. Had any single item been disclosed, Plaintiff would not have purchased Hero for $200,000, or at all.

## IX. FACTUAL ALLEGATIONS: POST-PURCHASE DISCOVERY OF FRAUD (NOVEMBER 2024 THROUGH AUGUST 2025)

48. On November 26, 2024, approximately sixty days after closing, Hero went lame again in the left front.

49. On December 2, 2024, Dr. Sarah M. Puchalski, DVM, DACVR, performed an MRI at Palm Beach Equine Clinic in Wellington, Florida, on referral

from Dr. Heather Sherman. The MRI confirmed regionally extensive medial lobe deep digital flexor tendinopathy extending from mid P2 to the distal limit of the navicular bone, with associated navicular bursitis, distal digital annular ligament thickening, and distal interphalangeal joint synovitis.

50. The clinical history recorded in the December 2, 2024 MRI report states: "Lame left front at prepurchase in September. Blocked to the coffin joint. Coffins and fetlocks were treated September 18, and horse improved enough for purchase."

51. On August 6-7, 2025, Dr. Puchalski performed a follow-up MRI confirming the DDFT lesion remains present. The clinical history adds: "Horse went lame again and blocked to coffin joint again on November 26, 2024."

52. Both MRI reports were prepared on referral from Dr. Sherman, the same veterinarian who administered the pre-sale injections on September 7, 2024, establishing a direct evidentiary link between the seller's veterinary knowledge and the post-sale diagnosis.

53. In or about November 2024, after Hero arrived lame at Oakland Stables in the Wellington, Florida area, Plaintiff's trainer, Darragh Kenny, an internationally competitive show jumping professional, had Hero examined and imaged. The examining veterinarian advised Mr. Kenny that the injury was not recent. Mr. Kenny then telephoned Defendant Maggie Jacobs. He informed her that Hero was lame, that the veterinarian believed the injury was old, and that she should take Hero back and refund the purchase price. Defendant Jacobs responded, in substance, that Hero "didn't have an injury before," that he "must have got injured with them," and that she was "not giving the money back." That statement was false, and Defendant Jacobs

knew it was false when she made it. Hero had been under veterinary treatment for the same left front lameness at Fairfield Equine Associates from April through August 2024.

54. Hero was never jumped after arriving at Oakland Stables lame. Under Mr. Kenny's professional supervision, Hero was rested for approximately nine months to allow the injury to heal. He then underwent approximately six months of rehabilitation, including veterinary treatment, laser therapy, and gradual reconditioning. He was then reintroduced to competition at low levels solely to rebuild strength. When Hero reached approximately the 1.35-meter level, the injury recurred in the same location. Hero, purchased to compete at the 1.45-meter level, never returned to the level for which he was purchased and has been retired.

55. Within 50 days of closing the sale of Hero, Defendant Maggie Jacobs began competing a horse named Chaccolouet (USEF #6012905) on or about November 18, 2024. Within 74 days, she was also competing horses named Fury (USEF #6015494) and Clyde (USEF #5821552), both first shown on or about December 12, 2024. Defendant Jacobs' rapid transition to three replacement competition horses immediately following the sale of Hero evidences her knowledge that Hero would not remain a viable competition horse.

## X. THE "AS IS" CLAUSE DOES NOT BAR PLAINTIFF'S CLAIMS

56. Section 4.1 of the Purchase Agreement provides that Hero is sold "as is" with no warranties. Section 5.2 provides that Buyer warrants she had the horse examined by a veterinarian and is satisfied with the results of the pre-purchase examination.

57. Under California law, an "as is" clause does not insulate a seller from liability for active concealment of a known material defect. *Lingsch v. Savage*, 213 Cal. App. 2d 729, 735, 741-42 (1963); *see also* California Civil Code sections 1572, 1709, and 1710. A seller who actively conceals a defect, or who takes affirmative steps to prevent its discovery, cannot invoke an "as is" provision as a shield against fraud.

58. Defendants did not merely remain silent. They administered bilateral therapeutic injections to Hero's front coffin joints and fetlocks on September 7, 2024, to suppress an active, progressive lameness condition, while withholding the Fairfield Equine clinical records documenting months of recurring left front lameness. These affirmative acts of concealment vitiate any "as is" protection.

59. The buyer's warranty of satisfaction with the pre-purchase examination in Section 5.2 presupposes that the examination was conducted on a horse whose condition was not artificially masked by undisclosed therapeutic injections. Where, as here, the seller corrupted the very examination the buyer relied upon, the buyer's acknowledgment of satisfaction is without legal effect.

60. At the time Plaintiff signed the Agreement on September 20, 2024, the pre-purchase examination was not complete. A handwritten notation on the Agreement adjacent to Section 5.2, dated September 20, 2024, states: "pending blood work / drug results expected." Plaintiff's warranty in Section 5.2 was therefore executed subject to an express written reservation that the pre-purchase examination results were outstanding, and cannot be construed as an unqualified acknowledgment of satisfaction with a completed examination.

## XI. FIRST CAUSE OF ACTION: FRAUD AND FRAUDULENT CONCEALMENT (AGAINST ALL DEFENDANTS)

61. Plaintiff incorporates all prior allegations by reference.

62. Defendants knew of Hero's chronic, progressive left front lameness and the Fairfield Equine clinical records documenting it. Defendants had a duty to disclose these material facts. Defendants intentionally suppressed and concealed them, administered pre-sale injections to mask the condition, and withheld veterinary records from Plaintiff and her PPE veterinarian. Plaintiff relied on Defendants' omissions and purchased Hero for $200,000. Plaintiff seeks compensatory damages exceeding $100,000 and punitive damages under California Civil Code section 3294.

## XII. SECOND CAUSE OF ACTION: INTENTIONAL MISREPRESENTATION (AGAINST ALL DEFENDANTS)

63. Plaintiff incorporates all prior allegations by reference.

64. Defendants, and specifically Defendant Maggie Jacobs, made affirmative false representations to Plaintiff's PPE veterinarian during the pre-purchase examination, including that Hero had "no illness," that his "Treatment History" was "none while in current owner's care," and that his only left front issue was a "hoof abscess." Each of these statements was false, as documented by the Fairfield Equine Associates clinical records in Defendants' possession at the time. Defendants knew these representations were false. Defendants made them with the intent to induce Plaintiff to complete the $200,000 purchase. Plaintiff, through her PPE veterinarian, actually and justifiably relied on these representations in deciding to proceed with the purchase. As a direct and proximate result, Plaintiff suffered

damages including the $200,000 purchase price, consequential damages exceeding $100,000, and is entitled to punitive damages under California Civil Code section 3294.

## XIII. THIRD CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION (AGAINST ALL DEFENDANTS, PLEADED IN THE ALTERNATIVE)

65. Plaintiff incorporates all prior allegations by reference.

66. Even absent intentional fraud, Defendants made representations regarding Hero's condition without reasonable grounds for believing them to be true. Plaintiff justifiably relied on those representations and suffered damages.

## XIV. FOURTH CAUSE OF ACTION: VIOLATION OF CALIFORNIA CIVIL CODE SECTIONS 1572, 1709, AND 1710 (AGAINST ALL DEFENDANTS)

67. Plaintiff incorporates all prior allegations by reference.

68. Defendants engaged in actual fraud (section 1572), willful deceit (section 1709), and deceit by suppression of material facts (section 1710). Plaintiff is entitled to all remedies provided by these statutes.

## XV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Laila Klinsmann respectfully prays for judgment against Defendants, jointly and severally, as follows:

(a) For compensatory damages in the amount of the $200,000 purchase price;

(b) For compensatory damages including veterinary expenses, board, training, transportation, lease and maintenance costs for a replacement horse, and loss of use, in an amount exceeding $100,000;

(c) For punitive damages under California Civil Code section 3294;

(d) For attorneys' fees and costs under Section 8 of the Purchase Agreement;

(e) For pre-judgment and post-judgment interest; and

(f) For such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff Laila Klinsmann hereby demands a trial by jury on all claims and issues so triable.

Dated: October 8, 2026

THE YOSHIDA FIRM, PC

By: David Yoshida

David Yoshida, Esq.
Attorney for Plaintiff
Laila Klinsmann